873 So.2d 858 (2004)
STATE of Louisiana, Appellee
v.
Alan B. JAMES, Appellant.
No. 38,353-KA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
*859 Kenota Pulliam Johnson, Louisiana Appellate Project, Counsel for Appellant.
Paul J. Carmouche, District Attorney, J. Thomas Butler, Laura O. Wingate, Ron C. Stamps, Assistant District Attorneys, Counsel for Appellee.
Before BROWN, PEATROSS, and DREW, JJ.
BROWN, C.J.
After a bench trial, defendant, Alan James, was found guilty of second degree murder and sentenced to the mandatory term of life imprisonment without benefit. Defendant has appealed his conviction. We affirm.

Facts
The victim, Nicholas Cox, on leave from the United States Navy, had returned to his home in Bossier City, Louisiana, during the month of November 2001. While at home, he visited with family and friends. Cox was scheduled to return to duty in Virginia on Monday, November 26, 2001.
On Saturday, November 24, 2001, the victim left Bossier City on his way to Virginia to return to military duty. Before beginning his trip to Virginia, Cox stopped to see defendant, a friend of his, who resided with his sister Tameka in Shreveport, Louisiana. Cox and defendant left in Cox's 1996 white Ford Crown Victoria to get something to eat from the corner store. Defendant was armed with a .32 black automatic pistol "for protection." The gun belonged to defendant's friend Jeremy Gray. Cox and defendant left the *860 store, with defendant driving because Cox was eating. There was no evidence of an argument or bad blood between the two friends on that date.
During the afternoon of November 24, 2001, Nicholas Cox received a fatal gunshot wound to the head while inside his Crown Victoria. There were no witnesses to the shooting, and the weapon was not recovered. Defendant admitted to shooting Cox with the .32 automatic that defendant had in his possession. Defendant, however, claimed that the shooting was accidental. According to defendant, while driving, he took the gun out of his pants. Cox saw the gun and asked defendant whether the weapon was loud when it was fired. Defendant rolled his window down, put his left arm out the window and fired the gun, which then jammed. Defendant stated that he attempted to clear the jam with his left hand on the handle and trigger and his right hand on top of the gun. Defendant stated that he was still driving while trying to clear the jam in the handgun and the weapon fired just as Cox was leaning forward to put his trash onto the passenger floorboard. The bullet struck Cox in the head. Defendant put Cox's body in the trunk of the car and drove around for approximately two hours, stopping at the homes of two friends and his own residence before driving to Greenwood where he buried Cox's body in a wooded area.
On November 27, 2001, the parents of Nicholas Cox filed a missing persons report with the Bossier City Police Department, because they had not heard from their son since he left to return to active duty on November 24, 2001. On November 27, Cox's mother, Verandia Sanders, received a call from an employee of Sarpy Medical Clinic, who informed her that her 1996 Ford Crown Victoria was sitting in their parking lot on Jewella Avenue in Shreveport.[1] Mrs. Sanders called the Shreveport Police Department to inform them of the location of the car.
SPD officers went to the lot in which the car had been abandoned. The officers observed large amounts of bloodstains inside the car and later found bloodstains in the trunk of the vehicle, along with some of Nicholas Cox's personal items. Their investigation led them to the residence of Tameka James, with whom defendant lived. After a search of Ms. James' home, authorities found a pair of blood-spattered, tan Timberland boots belonging to defendant. The police sought to question defendant regarding the victim's disappearance, having determined that defendant was the last person to see Nicholas Cox. They learned, however, that defendant had hopped a Greyhound bus to San Diego, California, on the same day that the victim's car had been found abandoned in the medical clinic's parking lot.
Thereafter, two telephone conversations between defendant and his sister Tameka were recorded. In the first conversation on November 30, 2001, defendant gave a general description as to how to find the body of Nicholas Cox, but authorities were unable to locate the body going by those directions. In the second call on December 5, 2001, defendant gave more specific details on the location of Cox's body. Defendant never stated during either of the two recorded conversations that he had shot Nicholas Cox. Instead, defendant related that someone told him where Cox's body could be found. After the December 5 telephone call, police were able to locate *861 the body of the victim, which was buried underneath brush and wood in a well-hidden area off of Shirley Frances Road in Greenwood, Louisiana.
After recovering the body, detectives from the SPD went to San Diego to arrest defendant for the murder of Nicholas Cox. While in California, defendant gave three videotaped versions of how Cox was killed. First, defendant stated that an unknown black male came up to the driver's side window of Cox's car and asked the victim whether he was Nicholas Cox. When Cox answered affirmatively, the man shot Cox in the head. Defendant claimed that he then moved Cox's body to the passenger seat and began driving the victim's vehicle. When authorities expressed their disbelief, defendant then stated that while Cox was playing around with the gun, he shot himself in the head. Finally, defendant gave the version of events that he related at trial. In this third and final account, defendant stated that the shooting was an accident. According to defendant, while he was trying to clear a jam in the gun, it fired, striking Cox in the head.
Defendant was extradited to Shreveport. On the flight back, after being read his rights, defendant voluntarily wrote a statement. In this written account, defendant again expressed that the shooting of Nicholas Cox was accidental. Defendant was charged with second degree murder. After defendant waived his right to a jury trial, a bench trial was held. The trial court found defendant guilty as charged. Defendant's trial attorney filed several post-trial motions which were denied. Defendant received the mandatory sentence of life imprisonment without benefit. This appeal ensued.

Discussion
Sufficiency of the Evidence
Defendant argues that the evidence presented by the state was insufficient to convict him of second degree murder. Specifically, he contends that the evidence failed to show that he had the intent to kill or inflict great bodily harm on Nicholas Cox.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.02/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.09/27/00), 768 So.2d 687, writs denied, 00-3070 (La.10/26/01), 799 So.2d 1150, 01-2087 (La.04/19/02), 813 So.2d 424. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
In order to prove the elements of second degree murder, the state was required to prove beyond a reasonable doubt that defendant killed Nicholas Cox while possessing the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1(A)(1).
In the instant case, defendant admitted that he shot and killed Nicholas Cox. However, because of defendant's claim that it was an accidental shooting, the state had to show that defendant possessed the specific intent to kill Cox. The state did not have the burden to prove specific intent as a fact; instead, this element of the offense could be inferred from the circumstances surrounding the case, as well as from the *862 actions of defendant. State v. Fuller, 414 So.2d 306 (La.1982); State v. Davies, 35,783 (La.App.2d Cir.04/05/02), 813 So.2d 1262, writ denied, 02-1562 (La.05/09/03), 843 So.2d 389; State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989).
Detective Rod Demery's testimony was one of the first officers to arrive at the victim's abandoned car which was parked in the Sarpy Medical Clinic lot. He testified regarding the blood found inside Cox's vehicle and in the trunk. Det. Demery also stated that defendant's residence was about a block from the Sarpy Medical Clinic. He also noted that in the search of the James' home, a pair of blood-spattered tan Timberland boots was recovered from defendant's bedroom. Thereafter, two conversations between defendant and his sister Tameka were taped, a result of which led to recovery of the victim's body from a wooded area in Greenwood, Louisiana. Detective Demery noted that the body was buried under brush and woods at least 600 feet from the roadway in an opening along a trail.
Dr. George McCormick, Caddo Parish Coroner, stated that Cox died from a gunshot wound to the head. According to Dr. McCormick, the bullet entered the victim's head above and behind his left ear and went from left to right in a slightly downward direction, through the skull and brain, exiting out the right side of his head just above and in front of his right ear. Dr. McCormick also testified to a marginal abrasion of soot at the entrance wound. He explained that this finding meant that the gun used to kill Cox was held only a few inches from his head. This testimony was in direct conflict with the version of the shooting told by defendant to the authorities.
Crime scene investigator Skylar Van Zandt testified as to the large amount of blood in the victim's car on the front passenger seat and in the rear floorboard of the passenger side. Specifically, Officer Van Zandt noted that the passenger seat was saturated with blood and that there was not a significant amount of blood found on the front passenger floorboard area, front dashboard, or passenger compartment. There was also blood on the plastic trim on the lower threshold of the passenger door. Officer Van Zandt noted that on the upright pillar on the front passenger side door, there was an indentation consistent with a low velocity or medium bullet impact.
Captain Mark Rogers, who was qualified as an expert in firearms instruction and crime scene investigation, revealed that the mark on the panel of the passenger door indicated a downward angle from a projectile. This was consistent with the testimony of Dr. McCormick regarding the path of the bullet that killed Cox. Capt. Rogers also testified that, after reviewing Dr. McCormick's autopsy report, he agreed that the presence of soot around the entry wound indicated that the gun was in close proximity to the victim's head. Capt. Rogers stated that the mark on the pillar of the passenger door was not consistent with someone clearing a jammed gun and it misfiring as defendant claimed. Capt. Rogers went on to state that it was highly unlikely that anything other than a projectile caused the indentation in the panel on the passenger side door. Capt. Rogers testified that the bloodstains in Cox's vehicle support the conclusion that the victim was sitting upright in the passenger seat and not leaning forward as defendant contended.
Defendant acknowledged that he shot Nicholas Cox. He also admitted that he put the victim's body in the trunk of the car and rode around, visiting friends for approximately two hours. Defendant *863 failed to seek any type of medical attention for Cox, and he purposely concealed the victim's body in a rural area where it was highly unlikely that the body would have ever been located but for the fact that defendant told his sister where the body could be found. When authorities found the victim's body, it had not been just "dumped," but was covered with brush and wood and was nearly 600 feet from the nearest roadway. After disposing of the body, defendant threw away his bloodied clothes in a garbage dumpster at a mall. When giving a statement to police, defendant gave three different versions of how the shooting occurred. The testimony of the state's witnesses was inconsistent with the version of events related by defendant. In short, none of the evidence, other than defendant's own statement to police, supports defendant's claim that the shooting was accidental.
Based on the evidence presented, the trial court found defendant guilty as charged. The testimony of the state's witnesses presented evidence that, when taken as a whole, could have led a rational trier of fact to find that the elements of second degree murder were established beyond a reasonable doubt. The evidence failed to support defendant's claim that the shooting was an accident. Furthermore, the testimony of the state's witnesses showed that it was highly unlikely that the shooting occurred as defendant claimed.
This assignment of error is without merit.
Expert Testimony
Defendant claims that the state failed to comply with his motion for discovery and inspection by making no reference to expert witnesses but then calling Captain Mark Rogers to testify as such. According to defendant, the state's violation of discovery resulted in prejudice constituting reversible error, and the trial court abused its discretion by allowing Capt. Rogers to testify.
The discovery rules, La. C. Cr. P. art. 716 et seq., are intended to eliminate any unwarranted prejudice which could arise from surprise testimony. State v. Toomer, 395 So.2d 1320 (La.1981); State v. Harris, 627 So.2d 788 (La.App. 2d Cir. 1993), writ denied, 93-3188 (La.03/18/94), 634 So.2d 851. Not every failure by the state to comply with these rules automatically requires a reversal; however, when such a failure results in prejudice to the defendant, it does constitute reversible error. Thus, in the event the state failed to comply with the discovery rules, it must be determined whether defendant was actually prejudiced by the nondisclosure and whether the trial court abused its discretion. Additionally, the effects of a discovery violation may be remedied by effective cross-examination. State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Hamis, supra; State v. Powell, 598 So.2d 454 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
Defendant argues that the state's failure to provide the name of its expert witness, Mark Rogers, a firearms instructor and crime scene analyst, violated the discovery rules and resulted in prejudicial error.
Prior to being qualified, Captain Rogers testified that he received training in instruction on firearm use and specialized training in the handling of handguns and rifles. He also testified that he had received specialized training in crime scene analysis and reconstruction. He stated that he has consistently attended classes on crime scene analysis, some held internationally.
Captain Rogers' testimony was presented by the state in an attempt to refute defendant's claim that the killing of Nicholas Cox was an accident. Capt. Rogers *864 was not contacted until a week before trial and after all discovery motions by the defendant had been submitted and satisfied. The state did not receive any reports or written findings by Capt. Rogers. The prosecution did notify defense counsel the day before trial that Capt. Rogers would be testifying. Counsel was given an opportunity to speak with the witness beforehand to find out the substance of his testimony. Therefore, defendant's attorney knew before Capt. Rogers testified and before conducting his cross-examination what the officer's testimony would be. Although the trial court denied defendant's counsel's request for an expert prior to the cross-examination of Capt. Rogers, defense counsel was given an opportunity to reassert the motion after cross-examination. The court stated, "At this point I'm denying your request for an expert based on my reasons previously stated. If there is an issue that you feel only an expert supplied by you may resolve then you may reurge your motion and we'll discuss it at that time." Defense counsel did not reassert the motion for an expert.
Even if this court were to find that the testimony of Capt. Rogers was a surprise, defendant has failed to show what prejudice he suffered because of it. Dr. McCormick's compelling testimony related the same information, albeit in a more specific way. Further, the trial court stated that common sense, not expert testimony, let the court know that the victim was sitting upright, not leaning over, when he was shot. Defendant's allegations of surprise and prejudice are general and conclusory in nature, with no reasoning in support. Furthermore, there was no reference to any place in the record which supports these claims.
This assignment is meritless.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.
NOTES
[1] The car had been recently purchased by the victim, and Mrs. Sanders had cosigned for the loan.