11 GASKINS, J.
The defendant, Errick White, was originally charged with simple burglary of an inhabited dwelling and conspiracy to commit simple burglary of an inhabited dwelling. Subsequently, the state filed an amended bill of information charging him with simple burglary and conspiracy to commit simple burglary. Following a jury trial, the defendant was acquitted on the former charge and convicted on the latter. His motion for postverdict judgment of acquittal was denied. The trial court sentenced him to four and a half years at hard labor, with credit for time served, for conspiracy to commit simple burglary. The court ordered that the sentence run concurrently with his sentence on an unrelated drug offense. The defendant’s timely motion to reconsider was denied. We affirm.
*194 FACTS
On November 18, 2002, the owner of a house on Blanche Street in Bastrop discovered that a rear door had been kicked in. Missing from the house were a cellular phone, a wall phone, a pair of white tennis shoes, a necklace, a ring, and about $90 in cash.
One of the homeowner’s daughters called the number of the stolen cell phone. It was answered by Antonio Peoples. He agreed to meet her; however, the police arrived instead. Peoples originally gave the officers a false number for the cell phone in his possession. However, when an officer dialed the number of the stolen phone, the cell phone he was holding began to ring. Peoples told the police that he bought the phone from the defendant and his brother, Justin Williams. According to Peoples, he also took the cell | {.phone in partial payment of a debt owed to him by the defendant. He denied knowing that the cell phone was stolen.
The day after the burglary, the police questioned Antonio “Jake” Minnieweather and took his statement. He admitted his participation in the burglary and stated that the defendant and Williams were also involved. Williams was located and questioned; he denied knowledge of the burglary. The police also spoke to the defendant, who admitted being the lookout. According to the defendant, Minnieweather was the one who kicked in the door.
A jury trial was held in August 2003. Immediately prior to trial, the trial court denied the defendant’s motion to suppress his statement to the police. The state presented the testimony of two police officers, Peoples, and Minnieweather. According to his testimony, Minnieweather admitted that he had pled guilty to simple burglary and received five years of probation. He initially denied that anyone was with him or that he knew anything about the cell phone. After he tried to evade the prosecutor’s questions about the burglary, the court informed him that he no longer had Fifth Amendment rights as to this offense. When Minnieweather asked if he could be charged for not telling what happened, the court removed the jury and informed the witness that false statements could lead to a perjury charge. Thereafter, Minnieweather continued his testimony in front of the jury and conceded that his police statement was truthful. He identified the defendant as one of the persons with him when they broke into the house on Blanche Street. He testified that a cell phone was removed from the house |3by Williams and that the defendant carried a small bag that they took from the residence. After they left, they went to a friend’s house on Roberts Street. The defendant called Peoples, who then purchased the cell phone.
Peoples testified that he got the cell phone from the defendant and Williams. Additionally, he was offered a pair of white tennis shoes; he declined to buy them.
The defense presented the testimony of the defendant’s brother. Williams indicated that he had entered a guilty plea to another charge and that he made restitution in relation to the burglary. According to him, he and Minnieweather entered the house while the defendant waited outside. Before entering, they told the defendant that they were going to “handle some business,” a street slang expression that meant that one was going to do “something out [of] the ordinary.” He denied knowing whether the defendant saw Minnieweather kick in the door. While he also denied having an agreement for the defendant to warn them, he said he was sure the defendant would have let them know if the police arrived. Williams further concéded that the cell phone was sold to Peoples in *195 partial settlement of a debt the defendant owed to Peoples.
The jury acquitted the defendant on the charge of simple burglary; however, it convicted him of conspiracy to commit simple burglary.
At sentencing, the trial court noted that the defendant had a 2001 conviction for possession of cocaine for which he received a suspended sentence of four and a half years and three years of supervised probation. His probation was revoked due to the present offense. The court chose to 14sentence the defendant to four and a half years at hard labor, to be served concurrently with the cocaine possession sentence.
The defendant appeals.
SUFFICIENCY OF EVIDENCE
In this assignment of error, the defendant argues that the evidence was insufficient to convict him because Min-nieweather was impeached after he initially lied on the stand. Also, the defense contends that there was no actionable conspiracy because there was no explicit stated agreement to commit a burglary, i.e., “let’s agree to commit a burglary.”
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. James, 38,353 (La.App.2d Cir.5/12/04), 873 So.2d 858. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442; State v. Cummings, supra; State v. James, supra.
To convict an accused of simple burglary, the prosecution must prove there was an unauthorized entry with the intent to commit a theft and that the defendant was a person concerned in the commission of the crime. La. R.S. 14:62; State v. Bullard, 29,662 (La.App.2d Cir.9/24/97), 700 So.2d 1051.
|fiTo convict of conspiracy, the prosecution must prove an agreement or combination of two or more persons for the specific purpose of committing a crime and an act done in furtherance of the object of the agreement or combination. La. R.S. 14:26; State v. Valrie, 1999-226 (La.App. 3d Cir.10/13/99), 749 So.2d 11, writ denied, 1999-3236 (La.4/20/00), 760 So.2d 343.
The trial testimony, viewed in the light most favorable to the prosecution, supports the defendant’s conviction beyond a reasonable doubt. The police investigated a break-in of a residence on Blanche Street in Bastrop, and the owner related that a cellular phone had been taken. Based upon information received from the victim, the police encountered Peoples and obtained information leading them to the defendant.
The police interviewed the defendant. After being advised of his rights, the defendant admitted his “part in it was to be the look out.” The defendant identified his accomplices as Minnieweather and Williams. He also confessed that he had gone to a residence on Roberts Street after the burglary and had sold the stolen cell phone to Peoples.
Minnieweather admitted pleading guilty to this burglary and said the defendant “didn’t have nothing to do with it.” However, he then contradicted himself by saying he and Justin Williams and the defendant entered the residence. Min- *196 nieweather agreed he had given conflicting testimony and there was no way the jury could tell when he was lying and when he was telling the truth.
Is As previously noted, Williams testified that he and Minnieweather had entered the residence after they told the defendant they were going to “handle some business,” which meant they were getting ready to do something out of the ordinary. Williams said there was no explicit agreement, but he knew that if the police came the defendant would “let us know something.”
The testimony, at the very least, supports a finding that the defendant was the lookout. Based on the testimony of Williams and on defendant’s admission to the police, the brothers had an understanding between themselves that the defendant would act as the lookout while the house was burglarized. Therefore, there was an agreement or combination even if it wasn’t expressly stated. The jurisprudence does not require there to be an express statement of agreement. The circumstances show that the defendant actively, and thus intentionally, desired the proscribed result to follow. Thereafter, there was an act in furtherance, to-wit: the house was broken into and property belonging to the resident was stolen. The circumstantial evidence of the defendant helping to sell the stolen cell phone to Peoples in partial payment of his debt tends to corroborate his involvement in the crime. This body of evidence proves the offense of conspiracy to commit simple burglary, even without relying on Min-nieweather’s testimony. This clearly was a compromise verdict, but juries are entitled to render lesser verdicts whenever they could have convicted on the greater charge. State v. Mitchell, 35,970 (La. App.2d Cir.5/8/02), 818 So.2d 807.
This assignment of error lacks merit.
^EXCESSIVE SENTENCE
For the offense of conspiracy to commit simple burglary, the defendant faced up to six years at hard labor. La. R.S. 14:26 and 14:62. Although the defendant assigns as error that his sentence is excessive, the brief does not state any specific reason to support that conclusion. The defense does not challenge the court’s articulation of reasons for sentence.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion an appellate court may not set aside a sentence as excessive. State v. Guzman, 1999-1528, 1999-1753 (La.5/16/00), 769 So.2d 1158; State v. Lingefelt, 38,038 (La.App.2d Cir.1/28/04), 865 So.2d 280.
Prior to imposing sentence, the trial court' reviewed a presentence investigation (PSI) report. The defendant had a prior conviction for possession of cocaine. He agreed to the revocation of his probation from |sthat conviction and the court said it would run the sentences concurrently with credit for time served. Observing that the defendant had been on probation when he *197 committed the instant offense, the trial court concluded that he was in need of institutional treatment. Also, the defendant had pending charges of possession of marijuana and resisting during booking. The court believed that the invasion of a home was a serious offense, but it gave consideration to the mitigating factor that the defendant had a young child.
The sentence imposed upon this 20-year-old second felony offender is within the range available to the court. It is not the maximum or close to it. The court considered aggravating and mitigating factors. On this record, there is no clear showing of an abuse of discretion.
This assignment of error is meritless.
ERRORS PATENT
In his final assignment, the defendant requested that this court review the record for errors patent. Since such a review is made automatically in all criminal cases, this request is unnecessary. State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556. We note no errors patent.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.