BROWN, Chief Judge.
11Defendant, Robert L. Clark, Jr., was charged by bill of information with armed robbery with a dangerous weapon, said weapon being a firearm, a violation of La. R.S. 14:64 and La. R.S. 14:64.3. Following a jury trial, defendant was found guilty as charged. The trial court sentenced defendant to serve 70 years at hard labor without benefit of parole, probation or suspension of sentence for .the conviction of armed robbery. Defendant was given an additional penalty of five years at hard labor without the benefit of parole, probation or suspension of sentence for the use of a firearm in the robbery. The sentences were ordered to run conseedtively.[1] Defendant now appeals, urging that the evidence was insufficient' to convict, the trial court erred in refusing to grant a mistrial, the trial court erred in not conducting a hearing on pro se motions filed by defendant, and the consecutive sentences of 70 years and five years are excessive. We affirm defendant’s conviction and sentences.

Facts

On September 2, 2011, defendant was charged by bill of information that on May 29, 2011, while armed with a dangerous weapon, a .45 caliber semi-automatic pistol, he robbed Phillip Gullo and Dillon Lopez in Bossier Parish, Louisiana, in violation of La. R.S. 14:64. The bill was amended On February 1, 2013, to add the Best Value Minn-Mart, LLC. (referred to | ^.throughout the trial and herein as “Emerson’s Grocery”) as a victim, and to specifically charge defendant under both La. R.S. 14:64 and 14:64.3.
In the afternoon of May 29, 2011, a man wearing sunglasses, a dark long-sleeved shirt,-gloves and'a cap came into Emerson’s Grocery armed' with-a pistol. He fired a round between the two clerks, Phillip Gullo and Dillon Lopez. He then demanded “all the money.” Gullo and Lopez complied, emptying two registers. The man was not satisfied, telling them, “I know ya’ll cash" checks here, give me the rest of the money.' Where’s the real money at?” At that time, Gullo opened up the third drawer, took the money from it, and put it into the bag. The man then instructed Gullo and Lopez to go to the back. When Gullo and Lopez got to the back room, they locked the door, and Gullo phoned the sheriffs department. Gullo gave officers a description of the suspect as a light-skinned black male wearing a yellow ball cap with a fleur de lis on it, black sunglasses, black gloves, a brown long-sleeved shirt, black pants and duck boots. Gullo also described the suspect as being between six feet to six feet two *154 inches tall and weighing approximately 180 pounds. Gullo testified that the man who robbed him ran into the woods toward the Fillmore Cemetery. The store manager determined that the amount of the money taken was $6,400. The store had surveillance cameras and a video of the robbery was introduced into evidence at defendant’s trial, which was held on April 16-19, 2013.
Sufficiency Of The Evidence
Under the Jackson v. Virginia standard, due process requires that no person be made to suffer the onus of a criminal conviction except upon sufficient proof, defined as evidence necessary to convince a trier of fact beyond reasonable doubt of the existence of every element of the offense. Appellate courts review the record in the light most favorable to the prosecution to determine whether the evi dence was sufficient to convince any rational trier of fact that all the essential elements of the crime had been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 660 (1979); State v. Tate, 01-1668 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide an appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.02/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165.
In this case, there is no question that an armed robbery with the use of a firearm occurred. At the trial in this matter, the state proved beyond a reasonable doubt that $6,400 was taken from the two clerks at Emerson’s Grocery. Both Gullo and Lopez testified that they emptied money from registers at Emerson’s Grocery into a bag. Angela Gullo, manager of Emerson’s Grocery, testified that the amount of loss was $6,400. The state also proved that the robber used force or intimidation by pointing the gun at the store clerks while demanding money and firing a round between them; this bullet and a shell casing were recovered from the scene. The video of the robbery clearly shows a firearm being used. Evidence established that | ¿the firearm was a .45 caliber Sig Sauer pistol. Thus the elements of armed robbery with the additional penalty for the use of a firearm were clearly met.
The issue in this case is the identity of defendant as the perpetrator of the crimes. When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047. Positive identification by only one witness is sufficient to support a conviction. Id. It is the factfinder who weighs the respective credibilities of the witnesses, and a reviewing court will generally not second-guess those determinations. Id.
On the day of the robbery, the officers were unable to locate the perpetrator. To determine who the robber was, deputies went through cell phone tower dumps to try to locate people who had made calls in the area during that time. They also reached out to the media by playing the surveillance video on every news station and running ads in the newspaper and The Inquisitor with still shots from the surveillance footage. Approximately two months after these efforts, the Bossier Parish Sheriffs Department received an anonymous call, which ultimately led to the arrest of defendant, Robert L. Clark, Jr.
*155 After viewing the footage of the robbery, several people'identified defendant as the perpetrator. Both store clerks identified defendant in open court as the person who robbed them. After the robbery, Gullo testified that he was shown photographs of four black males. He was unable to identify any of them as the person who robbed him. He did note that one of the mén |fihad similar features to the person that robbed him. That person was not defendant. Gullo identified defendant in open court as the man who robbed Emerson’s Grocery. Gullo further explained that although the man had on a ball cap and, sunglasses, he recognized that defendant had the same facial features as the robber. Specifically, Gullo pointéd out defendant’s jawline, nose, and ears. He was a “hundred percent” sure that defendant was the person who robbed him.
Shortly after the robbery, Lopez picked a suspect out from a six-person photo array and identified him as the robber. This person was also a light-skinned black man who had ears and bone structure similar to defendant. ' The man identified in the photo array was not defendant. Lopez testified that the police had not shown him any images of defendant, but he had seen images in the media of defendant. The images in the media identified defendant as the robber. Lopez identified defendant in court as the person shown robbing the convenience store in the video.
Additionally, two of defendant’s eo-work-ers, Louis Morgan and Christopher De-hoyes, when shown the video footage of the robbery, identified defendant as the robber. Defendant’s ex-girlfriend, Jasmine Billingsley, when she saw the video on TV and later with the deputies, identified defendant as the robber. Defendant’s aunt,' Judith Cork, when shown the footage during initial questioning with Detective Lt. Bletz, recognized the robber in the video footage as resembling her nephew, Robert Clark, Jr.; however, at trial as a defense witness, she said the person in the video was not defendant.
1 (¡Physical evidence also connected defendant to the armed robbery at Emerson’s Grocery; While investigating the robbery, officers learned that a gun had been stolen from the car of Lauren Rudy, who worked at Deja Vu. We note that after the state rested its' cáse, defendant testified that he previously worked at Deja Vu. Ms. Rudy testified that the gun was “a Sig .45” and identified in court a photograph that appeared to be the gun. The gun shown to Ms. Rudy was recovered from Christopher Dehoyes, a co-worker of 'defendant’s, who testified that he purchased the gun- from defendant for $180. After purchasing the gun, Dehoyes fired two test rounds. Gary Bass, who recovered the gun for BPSO, also fired a.test round for a reference sample.
Richard Beighley with the North Louisiana Crime Lab, an expert in firearms identification, testified that he examined the shell casing recovered at the scene of the crime, the two that Dehoyes fired, and the reference sample that Bass fired, and that all came from the same gun, the .45 caliber Sig Sauer pistol that was admitted into evidence. Beighley explained that guns generally have unique marks on them; and that every time a gun is fired it leaves an impressed mark in the primer. Beighley further testified that while he was not able to make a positive identification of a bullet in this case because of its damage, the bullet had the same class characteristics so as to have been fired from the gun admitted into evidence in this case. Specifically, the rifling was similar but there were not enough individual striations left on the undamaged part of the bullet for him to conclude without a doubt the bullet was fired from the- gun. However, the shell *156 Leasing recovered behind the counter at the scene showed that it came from the gun collected from Dehoyes.
Christopher Dehoyes and Louis Morgan, co-workers of defendant, testified that the glasses the, robber was wearing in the video of the robbery are similar to the glasses worn by Crescent Services’ workers. Defendant worked at Crescent Services and was issued a work truck. Dehoyes testified that he could see the Crescent Services logo in .the video footage of the armed robbery. During a search, Crescent Services glasses. and gloves were. recovered from the work truck in defendant’s custody and control.
Jasmine Billingsley, defendant’s former live-in. girlfriend, testified that on the day of the robbery, defendant attended church wearing a brown shirt and jeans. Ms. Billingsley identified several photographs in .court that were, retrieved from her cell phone. One was a photograph of defendant wearing the brown shirt, another was a photograph of defendant wearing a gold and black hat with afleur.de lis on it, a third was a photograph of Clark wearing sunglasses, and the last one was a photograph of a blue Chevrolet HHR that she owned and that was in defendant’s possession on the day of the robbery. The surveillance footage showed a blue. HHR Chevrolet passing in front of Emerson’s Grocery minutes before the robbery.
Ms. Billingsley further testified that she' and defendant had cell phones that were registered in her name. On July 7, 2011, Ms. Billingsley and defendant were present when a search was conducted of the home in which they lived. Ms. Billingsley gave officers permission to search her cell phone. As a result of the search,. Ms. Billingsley was arrested and also |scharged with armed robbery and accessory after the fact; these charges were, subsequently dismissed. . Prior to being charged, Ms. Billingsley, had seen a video on television of the robbery and suspected that the individual in the video was defendant, although, she was not certain. Ms. Billingsley testified that she did not have anything to do. with this robbery and. was not. present when it was committed. She did receive money from the robbery, but was unaware that it was from the robbery. Ms. Bill-ingsley identified, the individual in the video with a gun in his hand as defendant, and she identified defendant in open court,
The - armed robbery occurred around 3:30 to 3:45 p.m. on May 29, 2011. The cell phone forensic evidence shows that defendant made a phone call to Ms. Bill-ingsley on May 29, 2011, at 3:51 p.m. that hit off tower 661 located off Interstate 20, west of Haughton/Fillmore in the vicinity of Emerson’s Grocery. Just a few minutes later, Ms. Billingsley called defendant and this call hit off a different tower, number 637, indicating that defendant was on the move at a high rate of speed. The cell phone records place defendant in the vicinity of Emerson’s Grocery on the afternoon of the robbery, at. the time,in question.
Judith Cork, defendant’s aunt, testified for the defense. Some time after the robbery, Mrs. Cork, along with her husband, defendant, Jasmine Billingsley, and her two children saw the video of the robbery play on the television. When Mrs. Cork saw the video, she said that the guy in the video had a yellow hat with afleur.de Us on it like Clark’s and joked that if the man in the video was Clark, then where was her share of the money. As Rstated, thereafter, Mrs. Cork identified defendant in the video when talking to Lt. Bletz. However, at trial, Mrs. Cork testified that she did not think that defendant committed the robbery.
Defendant, Robert L. Clark, Jr., testified that he. has prior convictions in Texas for two counts of - aggravated assault and *157 one count of aggravated robbery. He served a 15-year prison sentence for the above convictions. Upon his release from prison in July 2010, he moved from Texas to Louisiana to live with his aunt. Defendant worked several jobs and, in April 2011, he began working in water transfer for Crescent Services. Defendant was no longer living with his aunt at that time; he moved out of her home about two months after he arrived in Louisiana. Prior to starting' his job at Crescent Services, defendant moved into Ms. Billingsley’s home.
On the afternoon in question, at approximately 3:00, defendant stated that he was headed toward Harrah’s race track to see two ex-girlfriends who worked there, drink for free, and play slots. Defendant said he arrived at Harrah’s race track between 3:00 p.m. and 3:30 p.m. Defendant claimed that he left the race track at approximately 3:45 p.m. because Ms. Bill-ingsley was texting and calling him incessantly. Defendant is certain of the time because immediately upon leaving, he called Ms. Billingsley.
Defendant testified that he has seen the videos of the robbery, and the man in .the video is not him. According to defendant, there are differences between him and the man in the video. Defendant testified that he does not sag his pants; he does not walk like the robber walks; his facial features are different; his dkin tone is not exact; and his nose "and lips are different. | ^Defendant admitted that he has a hat similar to the hat worn by the person who robbed the store, but that he didn’t have the hat on the day a search warrant was executed at his home. Defendant testified that he does not own a shirt like the one the robber was wearing and suggested that the photo shown to the jury of him and Ms. Billingsley was photoshopped.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may. impinge on that discretion only to the extent necessary, to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). Credibility determinations are the province of the trier of fact. State v. Johnson, 38,927 (La.App.2d Cir.11/23/04), 887 So.2d 751; State v. Powell, 27,959 (La.App.2d Cir.04/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.02/21/97), 688 So.2d 520.
The evidence produced by the state, the shell casings, articles of clothing, the proximity of the blue HHR to Emerson’s Grocery and the cell phone records, together with the. eyewitness in-court identification of defendant, was. sufficient to meet the state’s burden of proving beyond a reasonable doubt that defendant, Robert L. Clark, was guilty of armed robbery with the use of a firearm.
I nMotion for Mistrial
Defendant- filed a motion for mistrial, arguing that the photo array that Lopez and Gullo were shown shortly after the robbery when they identified a person other than defendant constituted Brady evidence. Suppression by the prosecution of evidence favorable to an accused upon his request for such evidence violates due process where the evidence is material, either to guilt or to punishment, irrespective of thé good faith ór bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Barker, 628 So.2d 168 (La.App. 2d Cir.1993), writ denied, 93-3194 (La.03/25/94), 635 So.2d 236. The term “Brady. violation” is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence..
*158 Not every failure by the state to comply with discovery rules automatically requires a reversal. Only when such a failure results in prejudice to the defendant does it constitute reversible error. In the event of the state’s failure to comply with the discovery rules, it must be determined whether the defendant was actually prejudiced by the nondisclosure and whether the trial court abused its discretion. State v. James, 38,353 (La.App.2d Cir.05/12/04), 873 So.2d 858. It is only when the defendant is lulled into a misapprehension of the strength of the state’s case through the prosecution’s failure to disclose timely or fully, and the defendant suffers prejudice when the undisclosed evidence is used against him, that basic unfairness results, which constitutes reversible error. State v. Allen, 94-2262 (La.11/13/95), 663 So.2d 686. The effects of a discovery violation may be remedied by effective cross-examination. State v. James, supra.
The photographic line-up was not initially disclosed because the person identified was clearly not the robber as he was 20 or 30 years older than photograph from which he was identified. The victims identified the perpetrator at trial as defendant. The victims testified that the suspect in the photographic lineup only had “similar features” to that of the robber. The victims testified that they did not recall viewing any other photographs and did not identify anyone else as the robber. Thus, there is no subsequent inconsistent identi-, fication that would have warranted disclosure.
Additionally, defense counsel was able to cross-examine the victims. Finally, there was an overwhelming amount of physical evidence that pointed to defendant as the robber. Thus, the failure of the state to disclose the photographic line-up did not cause prejudice to defendant. This assignment of error is without merit.
No Hearing on Defense Motions
Defendant contends that he filed a motion to suppress and raised specific issues related to his representation by appointed counsel. He claims the trial court failed to hold a hearing on either motion or to investigate the allegations of ineffective assistance of counsel.
Defendant filed a pro se motion to suppress on January 22, 2013. He also filed at least two other motions to suppress. After voir dire, but prior to the evidence portion of the trial, the trial court denied the motion to suppress. Thus, defendant’s motion to suppress was ruled upon by the 11scourt. Additionally, many of the motions filed in this case were filed both by trial counsel and again by defendant. For example, both trial counsel and defendant filed a motion for a new trial. While hearings were held on trial counsel’s motions, hearings were not necessarily held on defendant’s motions, although defendant’s motions were ruled upon. All defendant’s motions appear to have been considered and ruled upon. The substance of defendant’s motions was adequately considered in conjunction with the motions filed by his attorney. This claim is therefore without merit.
Furthermore, in defendant’s motion for denial of effective assistance of counsel, he claimed that trial counsel’s performance was deficient for his failure to conduct a prompt investigation of the circumstances of the case, failure to exclude illegally seized incriminating evidence, and failure to subpoena relevant witnesses. These issues are not readily ascertainable from the record in this case. Therefore, this claim is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because PCR creates the opportunity for a full *159 evidentiary hearing under La. C. Cr. P. art. 930. State v. Ellis, 42,520 (La.App.2d Cir.09/26/07), 966 So.2d 139, writ denied, 07-2190 (La.04/04/08), 978 So.2d 325.
Excessive Sentence
La. R.S. 14:64 provides that whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence.
1 uLa. R.S. 14:64.3 provides that when the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.
A sentence violates La. Const, art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.01/15/02), 805 So.2d 166.
The trial court is ■ given wide discretion in the imposition of sentences within -the statutory limits. The sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.04/09/03), 842 So.2d 330; State v. Diaz, 46,750 (La.App.2d Cir.12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether .the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.01/25/12), 86 So.3d 29.
Defendant’s sentences do not shock the sense of justice. Defendant could have killed either of the men by the ricochet of the bullet or an accidental discharge. The victims were fearful and believed that they would |1Bnot leave the store alive. Any sentence less than the one imposed would deprecate the seriousness of the crime. Moreover, La. R.S. 14:64 provides for a sentence between 10-99 years. A sentence of 70 years is within the statutory range. La. R.S. 14:64.3 provides for an additional five-year consecutive sentence. Consequently, the trial court did not abuse its discretion in imposing a 70-yéar sentence to run consecutive to a five-year sentence upon Robert L. Clark, Jr., for violating La. R.S. 14:64, armed robbery, and La. R.S. 14:64.3, armed robbery with the use of a firearm.
Pro Se Assignments of Error Related to Ineffective Assistance of Counsel
In Assignments of Errors Number Five, Six, and Seven, defendant appears to be making some claims that address the effectiveness of counsel at trial, some claims that were addressed at trial, and some otherwise .conclusory claims. The record is not sufficient to adequately resolve these issues on appeal. Thus, these assignments of error are more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Hampton, 98-0331 (La.04/23/99), 750 So.2d 867, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Ellis, supra.

*160
Conclusion

For the reasons set forth above, defendant’s convictions and sentences are affirmed.

. Initially, during a jurisdictional check of defendant’s appeal, No. 49,444-KA, this Court observed that defendant's 75-year sentence was indeterminate as he was not sentenced separately for his violations of La. R.S. 14:64. and La. R.S. 14:64.3. Accordingly, defendant’s sentence was vacated and remanded for resentencing, which was conducted on Septémber'2,2014. ,