CARAWAY, J.
| T John Henry Campbell was found guilty by a unanimous jury of aggravated second degree battery. Campbell was subsequently adjudicated a fourth felony offender and sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence. This appeal followed. His appellate counsel has filed a motion to withdraw, together with an An-ders[1] brief in support of the motion. Campbell filed a pro se brief alleging insufficiency of the evidence, improper admission of other crimes evidence, pretrial discovery violations and a jury deliberation error. For the following reasons, Campbell’s conviction and sentence are affirmed.

Facts

John Henry Campbell was charged by amended bill of information on August 23, 2010, with one count of aggravated second degree battery arising from allegations that Campbell burned his girlfriend multiple times with an iron. On August 24, 2010, Campbell’s jury trial commenced.
The first witness was Shreveport Police Officer Aisha Barns, who testified that she was the first police officer to respond to a domestic violence call at 5316 Avon Avenue in Shreveport, Louisiana, on November 20, 2009. When she arrived at the scene, Officer Barns immediately approached a black male, who had just exited his vehicle, read him his rights and passed custody of the man to Officer Brad Sotak and Corporal Richard McDonald for questioning. Officer Barns then spoke with theRyictim, Nakiel Hunter, and observed that she had suffered severe burns on her face and arms caused by a clothing iron which was introduced into evidence.
Corporal Richard McDonald testified that he was called to the scene and took photographs of Hunter’s injuries which were introduced into evidence. The pictures revealed burns on Hunter’s arms and face and a mark on Hunter’s neck that appeared to come from strangulation.
Officer Brad Sotak testified that upon his arrival at the scene, he discovered the iron used to burn Hunter, and noted it was still warm when he picked it up. Officer Sotak testified that his patrol car was equipped with audio and video capabilities. He transported Campbell to the police station in his patrol vehicle which recorded a conversation between the two. The video was introduced into evidence.
The video and audio portions of the recording showed Officer Sotak retrieve the iron and comment that it was still warm. Then, as Officer Sotak entered his vehicle to transport Campbell, he asked another officer whether Campbell had been read his rights. Both the other officer and Campbell stated that he had. Campbell then protested his innocence and stated that Hunter had burned herself with the iron. He also told Officer Sotak that he had used the iron the previous day. He *208 claimed that he choked Hunter, who is bipolar, so that she would stop burning herself with the iron. Campbell also explained that Hunter was upset because she had recently discovered that Campbell was sleeping with another woman. Officer So-tak testified that Campbell told him he did not have any scars on his person.
IsNakiel Hunter testified she was living at 5316 Avon Avenue in Shreveport with Campbell and her two children on November 20, 2009. Hunter stated that at approximately 6:30 a.m., Campbell told her son to go make his bed. Hunter told Campbell to make the bed and her children to wait for the school bus. Campbell responded that he was the provider for the family and could tell her children what to do. He then left the room and Hunter continued ironing her uniform for work. She heard loud noises coming from the other room and thought Campbell was breaking things. Approximately five minutes later, Campbell returned to the room where Hunter was ironing and began calling her insulting names. According to Hunter, Campbell pushed her onto the sofa and began choking her. Campbell then grabbed the iron and again told Hunter that she and her children had to listen to him. Hunter testified that Campbell took the iron and held her down by the throat and burned her with it. Hunter stated she did not have the strength to fight back and Campbell was able to burn her face and arms. Hunter tried to escape out the back door, but Campbell shoved her in the bathroom, pushed her in the bathtub and tried to put her head in the toilet. Hunter somehow escaped the bathroom and got to a phone to call her sister, but Campbell threw the phone and broke it. Hunter finally managed to leave the house and ran down the street to a neighbor’s house where she called 911.
Hunter testified that Campbell tried to follow her in his car, but police arrived and he returned to the house where police found him. Police took photographs of Hunter’s burns and the redness on her neck, which she | identified in court from the photographs admitted into evidence. Hunter testified that Campbell also burned her left breast and thigh with the iron and showed the jury the resulting scars. Hunter admitted that she suffers from bipolar disorder and had not taken medication for her illness since 2006, but stated that she had never physically injured herself and did not burn herself that day.
Hunter testified that she received several letters from Campbell after the incident and identified four letters admitted into evidence. Hunter recognized a letter postmarked November 30, 2009, wherein Campbell told Hunter, “it was all about you from the beginning.” Next, Hunter identified a December 15, 2009 letter wherein Campbell stated that “[w]e are both in the wrong, Baby, because I’m wrong for putting my hands on you and you are wrong for the way you talk to me.” Hunter identified a letter postmarked January 4, 2010, wherein Campbell told her, “[y]ou told me that you was going to make me an appointment for anger management class.” Hunter conceded that she told Campbell prior to the incident she would make him an appointment for anger management. Finally, Hunter identified a letter from Campbell postmarked March 22, 2009, wherein Campbell referred to Hunter as his wife. Following Hunter’s testimony, the state rested.
The defense called Campbell as its sole witness. Campbell admitted to previously being convicted of illegal use of weapons on March 5, 1996, distribution of a schedule II controlled dangerous substance on September 21, 1998, criminal trespass on April 16, 2004, and unauthorized entry of *209 an inhabited dwelling on February 27, 2006. Campbell testified he had lived lswith Hunter since September of 2007 and that she often accused him of cheating and acted irrationally due to her bipolar disorder. Campbell also stated that Hunter would sometimes hit herself and call herself “stupid.” He stated that she also told him once that she thought about killing herself.
Campbell testified that on the morning of November 20, 2009, Hunter accused him of cheating on her with a former eoworker. Campbell stated that Hunter told him “if I can’t have you ain’t nobody have you” and proceeded to burn her face with the iron. Campbell testified that he jumped on top of her and began choking her in an attempt to get the iron from her. Campbell stated he was still on probation and was afraid he would get blamed. After the incident, Hunter left to go down the street and Campbell followed her to make sure she did not tell anyone that he had burned her. Campbell denied burning Hunter.
Campbell could not explain how Hunter burned both of her arms if she was holding the iron with one hand. He admitted that he never asked about Hunter’s welfare after he was arrested and stated that he believed that Hunter concocted the plan to injure herself to send him to prison for life.
After considering the evidence and testimony, the jury returned a unanimous verdict of guilty of aggravated second degree battery.
On November 17, 2010, Campbell was adjudicated a fourth felony habitual offender. The trial court vacated Campbell’s previously imposed sentence,[2] and resentenced Campbell to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence because |fihe was a fourth felony offender with a predicate offense for a crime of violence and a drug conviction. This appeal followed.

Discussion

Campbell’s appellate counsel filed an Anders brief which alleged the existence of no non-frivolous issues for appeal and sought the withdrawal of counsel. Campbell was afforded and took the opportunity to file a brief. Upon review of Campbell’s arguments, this court issued an order to counsel to brief arguably non-frivolous issues raised in Campbell’s brief relating to other crimes evidence which was not disclosed during pretrial discovery. Thereafter, counsel filed a brief addressing the pretrial discovery issue, urging reversal of Campbell’s conviction. Thus we address the merits of the appeal.
In his pro se brief, Campbell first argues insufficiency of the evidence to convict because the jury failed to consider that Hunter burned herself with the iron in an effort to send Campbell to jail for life so that he could not be with another woman. In support of his claim, Campbell points to his testimony and the fact that Hunter admitted to suffering from bipolar disorder.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 *210 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Moton, 46,607 (La.App.2d Cir.9/21/11), 73 So.3d 503, 508; State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/05/03), 852 So.2d 1020.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Moore, 44,429 (La.App.2d Cir.8/26/09), 20 So.3d 1137, writ denied, 09-2166 (La.4/9/10), 31 So.3d 378; State v. Robbins, 43,129 (La.App.2d Cir.3/19/08), 979 So.2d 630. When the conviction is based on | ¡^circumstantial evidence, such evidence must exclude any reasonable hypothesis of innocence. La. R.S. 15:438.
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 06-2514 (La.5/4/07), 956 So.2d 607; State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App.2d Cir.5/9/07), 956 So.2d 769; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 00-2726 (La.10/12/01), 799 So.2d 490. See also, State v. Johnson, 96-0950 (La.App. 4th Cir.8/20/97), 706 So.2d 468, writ denied, 98-0617 (La.7/2/98), 724 So.2d 203, cert. denied, 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999). The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
Aggravated second degree battery is defined as a battery committed with a dan *211 gerous weapon when the offender intentionally inflicts serious bodily injury. La. R.S. 14:34.7. Serious bodily injury is defined as bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty, or a substantial risk of death. Id.
The evidence adduced at trial, when viewed in a light most favorable to the state, was sufficient to convict Campbell of aggravated second degree battery. Hunter’s testimony provided direct evidence of the fact that Campbell intentionally burned her with an iron. Likewise, photographs showing that Hunter was burned on both arms belie Campbell’s claim that she burned herself. Furthermore, the testimony of the police officers and the photographs of Hunter’s injuries provided additional proof that she suffered obvious disfigurement and pain as a result of the burns. Thus, the jury’s choice of Hunter’s testimony, thereby rejecting Campbell’s assertions, was reasonably supported by the evidence. The jury’s credibility | ^determination is entitled to great weight and will not be reconsidered by this Court on appeal. Accordingly, this assignment is without merit.
In his pro se brief, Campbell contends that the trial court erred in allowing the state to introduce the December 15, 2009 and January 4, 2010 letters into evidence. He contends that the subject letters contain evidence of other crimes and bad acts where he told Hunter, “[w]e are both in the wrong, Baby, because I’m wrong for putting my hands on you and you are wrong for the way you talk to me” and “[y]ou told me that you was going to make me an appointment for anger management class.” Campbell argues that the trial court should have conducted a Prieur[3] hearing before allowing the letters to be introduced into evidence.
As noted above, the state sought to introduce the letters into evidence during Hunter’s testimony. The trial court removed the jury and heard the preliminary arguments of counsel. The defense objected on the grounds of surprise because the letters were never produced in discovery and “bordered” on others crimes evidence. The state claimed that it had informed the defense of the existence of the letters, but was not planning on using them until the defense asked Hunter if she had tried to reconcile with Campbell. Thus, the state sought to introduce the letters to show that it was Campbell who sought to reconcile with Hunter, not vice versa, as Campbell claimed. Further, the state argued that in discovery, the defense had been given the opportunity to view any and all statements.
InUpon defense counsel’s suggestion, the court allowed a short break to review the letters and to allow the defense to do the same. The court at that time ruled that defense counsel was notified that there were letters and that there was “no surprise about the letters.” Following review of the letters by the defense, the state indicated its intent to introduce only four into evidence and the defense agreed to allow the November 30, 2009, January 4, and March 22, 2010 letters into evidence after conceding that they were relevant to the issue of reconciliation.
Nevertheless, the defense objected to the introduction of the December 15, 2009 letter, wherein Campbell stated, “I was wrong to put my hands on you,” on the grounds that it should have been disclosed as a “confession or a statement of admission that should have been made available *212 under Article 716 of the Code of Criminal Procedure.” The state again contended that the letter had been available for inspection any time by defense counsel through pretrial discovery.
After reviewing the subject letter, the trial court determined that Campbell’s statement about putting his hands on Hunter was in reference to his choking her, and therefore was not evidence of other crimes, but an admission that he had already conceded as part of his defense. Thus, the court overruled the defendant’s objection.
The record includes Campbell’s discovery request to the state wherein he requests that the state “inform the Defendant, in writing, of the existence of and to permit the defendant to inspect and copy, photograph or | ^otherwise reproduce any relevant written or recorded confession or statement of any nature of the defendant” in the possession of the state. The state’s discovery response to Campbell informed the defendant that the state “intends to introduce at trial any statements made by the defendant and/or co-defendants, including res gestae statements, which are referred to in the attached reports. If any exists, the state has enclosed copies of any written or recorded statements made by the defendant.” The discovery response also included general permission for the examination of all items of evidence by Campbell.
Evidence of other crimes, wrongs or acts committed by the defendant is generally inadmissible because of the “substantial risk of grave prejudice to the defendant.” Prieur, 277 So.2d at 128. However, the state may introduce evidence of other crimes, wrongs or acts if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B)(1). The state must provide the defendant with notice and a hearing before trial if it intends to offer such evidence. Prieur, 277 So.2d at 130. Even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant’s defense. State v. Martin, 377 So.2d 259, 263 (La.1979); Prieur, 277 So.2d at 130.
Although a defendant’s crimes, wrongs or prior bad acts may be relevant and otherwise admissible under La. C.E. art. 404(B), the court must Instill balance the probative value of the evidence against its prejudicial effects before the evidence can be admitted. La. C.E. art. 403. Any inculpatory evidence is “prejudicial” to a defendant, especially when it is “probative” to a high degree. State v. Germain, 433 So.2d 110, 118 (La.1983). As used in the balancing test, “prejudicial” limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. Id. See also, Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997).
Article 404(B) specifically provides that “the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial,” which reflects the Prieur ruling. However, not every violation of pretrial procedures, including Prieur violations, requires reversal of a conviction. Before a defendant can complain of such a violation, he must show prejudice. Prieur speaks of the “substantial risk of grave prejudice” to a defendant arising out of inadmissible or surprise admission of other crimes evidence, but does not presume that prejudice. State v. Blank, 04-0204 (La.4/11/07), 955 So.2d 90, cert. denied, 552 U.S. 994, 128 S.Ct. 494, *213 169 L.Ed.2d 346 (2007); State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996); State v. Moton, supra.
The erroneous admission of other crimes evidence due to the state’s failure to give the defense proper notice, or for any other reason, is subject to the harmless error rule because the erroneous introduction of other crimes evidence is a trial error, i.e., an error which occurs during the case’s | ^presentation to the trier of fact, which may be quantitatively assessed in the context of the other evidence. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102. An error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error. State v. Robertson, 06-1537 (La.1/16/08), 988 So.2d 166.
We find no error in the trial court’s ruling that the letters contained no prejudicial reference to other crimes evidence. The language referring to Hunter’s scheduling Campbell for anger management classes cannot be regarded as evidence of other crimes, wrongs or acts. Likewise in context, Campbell’s comments regarding putting his hands on Hunter relate to Campbell’s defense regarding the crime at hand as the trial court noted and therefore are not a reference to “other” crimes, wrongs or bad acts. Thus, Campbell’s complaint has no merit.
In a supplemental brief, appellate counsel for Campbell argues that Campbell’s statement about his putting his hands on Hunter was in the nature of a confession or statement of admission which was not disclosed in discovery in violation of La.C.Cr.P. art. 716. Campbell contends that this nondisclosure lulled the defense into the false belief that the state did not have the letters so as to surprise and prejudice Campbell’s defense.
La.C.Cr.P. art. 716 provides as follows:
Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, control, or knowledge of the district attorney.
The provisions of La.C.Cr.P. art 768 read:
11fiUnIess the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
La.C.Cr.P. art. 729.5 discusses the failure to comply with discovery as follows:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
B. In addition to the sanctions authorized in Part A hereof, if at any time prior or subsequent to final disposition the court finds that either the state through the district attorney or assis *214 tant district attorney or the defendant or his counsel has willfully failed to comply with this Chapter or with an order issued pursuant to this Chapter, such failure shall be deemed to be a constructive contempt of court.
The rules of discovery are intended to eliminate unwarranted prejudice arising from surprise testimony to permit the defense to meet the state’s case, and to allow proper assessment of the strength of its evidence in preparing a defense. State v. Harris, 00-3459 (La.2/26/02), 812 So.2d 612; State v. Statum, 390 So.2d 886, 889-90 (La.1980), cert. denied, 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 619 (1981). The failure of the state to comply with discovery rules does not bring automatic reversal; rather, prejudice must be shown. State v. Harris, supra; State v. Sanders, supra; State v. Schrader, 518 So.2d 1024, 1031-32 (La.1988), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990). When the defendant is lulled into misapprehension of the strength of the state’s case through the failure of the prosecution to timely or fully disclose and the defendant suffers prejudice, |lfibasic unfairness results which constitutes reversible error. State v. Harris, supra; State v. Allen, 94-2262 (La.11/13/95), 663 So.2d 686; State v. Mitchell, 412 So.2d 1042, 1044 (La.1982); State v. Carter, 43,304 (La.App.2d Cir.6/18/08), 987 So.2d 364, writ denied, 08-2752 (La.9/25/09), 18 So.3d 86.
Although a mistrial is among the sanctions which the trial court could have chosen if it had viewed the circumstances in this case as a discovery violation, a mistrial is a drastic remedy and, except in instances in which the mistrial is mandatory, is warranted only when a trial court error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. State v. Comeaux, 514 So.2d 84, 96 (La.1987).
Moreover, as provided in La. C.Cr.P. art. 729.5, the article which details the arsenal of sanctions available for discovery violations, no particular remedy is mandated. State v. Harris, supra. The effects of a discovery violation may be remedied by effective cross-examination. State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Carter, supra; State v. James, 38,353 (La.App.2d Cir.5/12/04), 873 So.2d 858.
We find no error in the trial court’s admission of the subject letter into evidence. In accordance with La.C.Cr.P. art. 729.5, the court ordered immediate disclosure of the letter to the defense which was given ample time to review the evidence prior to its admission into evidence. Thus, any claimed surprise was eliminated. Upon its admission into evidence, Campbell was afforded full cross-examination of Hunter. Finally, the information contained in the letter did not contradict Campbell’s defense 117which always included his admission that he choked or touched Hunter in order to stop her from burning herself. Accordingly, Campbell has failed to demonstrate substantial prejudice in the admission of the letter into evidence. This assignment of error has no merit.
In his final pro se argument, Campbell claims that the trial court erred in allowing the jury to retain a copy of the jury charge to be used during the deliberations without first reading same in open court and for the record in accordance with La.C.Cr.P. art. 801. Article 801 requires the trial court to read the jury charges to the jury following closing arguments and before deliberation.
The record shows that following closing arguments, the trial court gave the jury a copy of the jury charges and read the charges aloud. The charges were then taken from the jury and a single copy of *215 the charges (by agreement by both parties), along with the verdict form, were given back to the jury in the deliberation room. Campbell contends that the trial court erred in allowing the jury to retain a copy of the jury charges without first reading the charges in open court for the record.
In relevant part, La.C.Cr.P. art. 801(A) and (B)(1) provide:
A. The court shall charge the jury after the presentation of all evidence and arguments. The court shall reduce its charge to writing if it is requested to do so by either a defendant or the state prior to the swearing of the first witness at the trial on the merits. The court’s written charge shall be read to the jury. The court shall deliver a copy thereof to the defendant and to the state prior to reading it to the jury.
B. (1) After such written charge is read to the jury, a copy of the written charge shall be delivered to the jury if such delivery is consented to by both the defendant and the state in open court but not in the presence of the jury.
|1sWe discern no reversible error by the trial court in allowing the jury to retain a copy of the jury charges in deliberations. The action of the trial court was statutorily sanctioned by La.C.Cr.P. art. 801(B)(1) upon the parties’ agreement. Additionally, in contradiction to Campbell’s claim, the record reveals that the trial court read the jury charges in open court in accordance with La.C.Cr.P. art. 801(A). We find no merit to this claim.
Upon error patent review, we note that the trial court informed Campbell that he had three years from the finality of his conviction and sentence within which to file post-conviction relief, instead of the two-year period, in accordance with La. C.Cr.P. art. 930.8. By this opinion, Campbell is advised that he has two years from the date his conviction and sentence become final within which to file post-conviction relief.

Decree

For the foregoing reasons, Campbell’s conviction and sentence are affirmed.
AFFIRMED.

. The brief was filed in accordance with the cases of: Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241; State v. Mouton, 95-0981 (La.4/28/95), 653 So.2d 1176; and State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir.1990).

. On September 30, 2010, Campbell had been sentenced to 15 years at hard labor on the aggravated second degree battery conviction.

. This type of hearing was first sanctioned in State v. Prieur, 277 So.2d 126 (La.1973).